UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE HERRERA,

   Petitioner,

             CASE NO. 4:06-CV-13583
v.            JUDGE PAUL V. GADOLA
             MAGISTRATE JUDGE PAUL J. KOMIVES

MILLICENT WARREN,

   Respondent.
_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.  RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.  REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  A.  *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
  B.  *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  C.  *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  D.  *Evidentiary Claim (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    1.  Habeas Review of Evidentiary Claims Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    2.  Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
  E.  *Sufficiency of the Evidence Claim (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    1.  Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    2.  Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
  F.  *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
III.  NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

\*  \*  \*  \*  \*

I. RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II. REPORT:

A. *Procedural History*

  1. Petitioner Jose Herrera is a state prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

  2. On May 23, 2003, following a jury trial, the Oakland County Circuit Court convicted

petitioner of possession with the intent to deliver 650 or more grams of cocaine, in violation of MICH. COMP. LAWS § 333.7401 (2)(a)(I). On June 23, 2003, the court sentenced petitioner to 20 to 40 years' imprisonment.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I. THE TRIAL COURTS ALLOWANCE OF TESTIMONY PURSUANT TO MICHIGAN RULES OF EVIDENCE 404(B) CONCERNING ALLEGED AND UNCHARGED STREET-LEVEL DRUG SALES IN THIS PROSECUTION FOR POSSESSION WITH INTENT TO DELIVER OVER 650 GRAMS OF COCAINE WAS AN ABUSE OF DISCRETION WHICH DENIED MR. HERRERA HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
>
> II. THE PROSECUTION'S EVIDENCE THAT PETITIONER AIDED AND ABETTED THE POSSESSION OF COCAINE WITH INTENT TO DELIVER, OR EVEN THAT HE KNEW ABOUT THE PRESENCE OF COCAINE IN THE APARTMENT WAS INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT HIS KNOWING POSSESSION AND INTENT TO DELIVER OVER 650 GRAMS OF COCAINE, A REQUISITE ELEMENT OF THE OFFENSE.

The Michigan Court of Appeals found no merit to petitioner's claims and affirmed his conviction and sentence. *See People v. Herrera*, No. 249569, 2005 WL 1750769 (Mich. Ct. App. July 26, 2006) (per curiam).

4. Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied his application for leave to appeal in a standard order. *See People v. Herrera,* 474 Mich. 977, 707 N.W.2d 200 (2005).

5. Petitioner, proceeding *pro se* filed the instant application for a writ of habeas corpus on July 17, 2006. As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state appellate courts.

6. Respondent filed his answer on February 13, 2007. He contends that petitioner's claims are without merit.

B. *Factual Background Underlying Petitioner's Conviction*

Following a jury trial before visiting Judge Charles Simon, the Oakland County Circuit Court convicted petitioner of possession with the intent to deliver 650 or more grams of cocaine, a violation of MICH. COMP. LAWS § 333.7401 (2)(a)(i). Trial Tr., Vol. IV, at 5, 7-9. The court sentenced petitioner to twenty to forty years' imprisonment. Sentencing Tr., at 10.

Sergeant Kurt Simpson of the Waterford Township Police testified that on October 2, 2002, he was part of a special response team that executed a search warrant at apartment 316 in building 19 of the River's Edge Apartments. Trial Tr., Vol. II, at 55-58. The police knocked on the door repeatedly but there was no answer. Trial Tr., Vol. II, at 60. The police stated: "Police. Search warrant." No one came to the door. Trial Tr., Vol. II, 62. When there was still no answer, the police broke in the door. Trial Tr., Vol. II, at 60, 62, 75.

The police found petitioner in the living room of the two-bedroom apartment. Trial Tr., Vol. II, at 64, 96-97. Sergeant Simpson and another officer attempted to enter a bedroom, but someone slammed the door shut from the inside. Trial Tr., Vol. II, at 67-68, 86. The officers tried to open the bedroom door and stated "police, search warrant" and "policia." Trial Tr., Vol. II, at 68, 77, 87. Eventually, the police opened the door and found Maria Martinez and Cesar Garcia Hernandez. Trial Tr., Vol. II, at 69-70, 87-88. Co-defendant Cervantes was in the other bedroom during the raid. Trial Tr., Vol. II, at 71.

Waterford Township Police Officer Rick Lemos testified that he was a narcotics trafficking expert and part of the Oakland County Narcotics Enforcement Team (NET) and the Special

Operations Unit (SOU). Trial Tr., Vol. II, at 99-101. Lemos was part of the raid team, and he searched the second bedroom in which Cervantes, Contreareas, and a child were staying. Trial Tr., Vol. II, at 103. In the closet, Lemos found a gun bag which contained ammunition, a holster, and a picture taken inside the apartment of petitioner with a gun. Trial Tr., Vol. II, at 103. 124, 139-40. Lemos also found an identification card and a Social Security card with the name "Alberto Herrera." Trial Tr., Vol. II, at 105, 121-22. He also found a Michigan vehicle title to a 1994 Cadillac DeVille, which was registered to Jose Alfredo Herrera (petitioner's full name). Trial Tr., Vol. II, at 106, 201-202. In that same bedroom, Lemos found three cell phones and a charger. Trial Tr., Vol. II, at 106, 122.

Lemos also searched a closet in the dining room. Trial Tr., Vol. II, at 107. He found a digital scale and an expired driver's license for Cervantes, both covered with white powder residue. Trial Tr., Vol. II, at 108-09, 111, 113-15, 125, 129, 136. The residue field tested positive for cocaine. Trial Tr., Vol. II, at 205. Lemos testified that the someone could have used the expired driver's license to cut cocaine. Trial Tr., Vol. II, at 125-26. Lemos also found garbage bags, small plastic bags, Saran wrap, baking soda, and a carton of creatine. Trial Tr., Vol. II, at 108-09, 113, 126. Lemos testified that the baking soda and creatine were cocaine cutting agents. Trial Tr., Vol. II, at 112, 126.

Lemos also found petitioner's wallet, which contained $141, on the dining room table. Trial Tr., Vol. II, at 115-17, 127, 137 and Trial Tr., Vol. III, at 129-30. Lemos found a second wallet that belonged to petitioner, which contained $350. Trial Tr., Vol. II, at 119-120, 128 and Trial Tr., Vol. III, at 13. Lemos also searched the kitchen, and found a grocery bag which contained heat seal packages and materials. Trial Tr., Vol. II, at 112, 138. Lemos testified that he could smell cocaine inside the apartment. Trial Tr., Vol. II, at 113.

4

Waterford Police Detective Jerry Niedjelski testified as an expert in narcotics trafficking. Trial Tr., Vol. II, at 144-46. He stated that one gram of cocaine would sell for about $100. Trial Tr., Vol. II, at 147. A kilogram of cocaine would sell for between $25,000.00 and $30,000.00. Trial Tr., Vol. II, at 147. He stated that if someone had 8,800 grams of cocaine, as found in the apartment, it would most likely not be for personal use. Trial Tr., Vol. II, at 153, 205-06. Niedjelski also testified that between 10 to 14 days before the raid, he observed Cervantes and petitioner four or five times. Trial Tr., Vol. II, at 154, 266. On the Friday before the raid, Niedjelski observed petitioner sitting in his Cadillac at Dillinger's Bar in Pontiac. Trial Tr., Vol. II, at 156-57, 202, 226, 228, 244-45 and Trial Tr., Vol. III, at 8, 13. The address on the Cadillac's registration matched the apartment that was raided. Trial Tr., Vol. II, at 158. Niedjelski saw the passenger, whom he did not recognize, go into Dillinger's. After several minutes, four people approached the Cadillac at separate intervals, each spending 15 to 30 seconds at the open passenger-side window. Trial Tr., Vol. II, at 158-59, 227-28. Niedjelski saw hands moving back and forth and believed that this activity was consistent with drug transactions. Trial Tr., Vol. II, at 159, 231 and Trial. Tr., Vol. III, at 11-12, 17-18. Niedjelski followed petitioner's Cadillac to a house in Pontiac. Trial. Tr., Vol. II, at 163-64. Petitioner returned to Dillinger's after 15 minutes, and then went to another bar called Bongo's. Trial Tr., Vol. II, at 164, 226, 228-29. Niedjelski went inside and saw Cervantes but did not see petitioner. Trial Tr., Vol. II, at 165-66, 229.

On October 1, 2002, one day before the raid, Niedjelski examined 3 trash bags from the apartment. He believed that Cervantes took the trash out. Trial Tr., Vol. II, at 167, 222, 226, 231. Niedjelski found over 20 plastic sandwich bags with white residue. Trial Tr., Vol. II, at 168, 231-32, 247. He also found an empty package made of duct tape and Saran wrap, which contained white

5

residue. The residue field tested positive for cocaine. Trial Tr., Vol. II, at 168-69, 206, 225-26, 231-32, 247.

On the morning of the raid, Niedjelski searched the bedroom belonging to Martinez and Hernandez. Trial Tr., Vol. II, at 171. He testified that the room smelled of cocaine and that he found an open duffel bag containing $29,980.00 in cash and a kilogram brick of cocaine. Trial Tr., Vol. II, at 171-72, 175-76, 238-39, 268. He also found two black garbage bags containing five one-kilogram bricks and three half-kilogram bricks of cocaine. Trial Tr., Vol. II, at 173, 176, 179-80, 239, 254, 274. He found a heat seal machine and two one-half kilograms of sealed cocaine under the bed, as well as a safe containing razor blades and a card. Trial Tr., Vol. II, at 180-83, 195, 239. Finally, Niedjelski testified that he learned from two sources that Martinez transported the cocaine from Mexico to the apartment. Trial Tr., Vol. II, at 260-62, 276-77 and Vol. III, at 14-15, 20.

Rachel Witek, a forensic chemist at the Oakland County Sheriff Crime Laboratory positively tested one of the bricks as cocaine. Trial Tr., Vol. II, at 210-12. However, the police were unable to obtain fingerprints from the cocaine. Trial Tr., Vol. II, at 243, 276.

Contreareas testified that petitioner was her brother and had been living in the apartment for two years. Trial Tr., Vol. III, at 38. She said she did not know there was cocaine in the apartment. Trial Tr., Vol. III, at 41, 47, 49, 51.

Oakland County Sheriff Deputy Carlos Lopes testified that during questioning petitioner denied knowing anything about the cocaine. Trial Tr., Vol. III, at 122.

Cervantes testified that petitioner used to work at Olga's Kitchen but was unemployed at the time of the raid, but still paid $100 in rent every month. Trial Tr., Vol. III, at 155.

The jury convicted petitioner as charged. (Trial Tr., Vol. IV, at 5, 7-9).

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

7

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's

8

resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D. *Evidentiary Claim (Claim I)*

Petitioner first challenges the admission of evidence of his alleged and uncharged drug sales that occurred approximately five days before the raid on the apartment. The Court should conclude that this claim is without merit.

    1. *Habeas Review of Evidentiary Claims Generally*

Habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental

9

right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2. *Analysis*

Petitioner contends that the trial court erred by permitting the admission of testimony regarding his alleged and uncharged street-level drug sales. However, admission of the prior bad acts evidence did not deny petitioner a fair trial.

A habeas court is not entitled to review state court interpretations of state law. *Estelle*, 502 U.S. at 67-68. Even if the trial court improperly admitted prior bad acts evidence under Michigan Rules of Evidence 404(b), petitioner is not entitled to habeas relief unless this action denied him a fair trial. Both the Supreme Court and the Sixth Circuit have repeatedly held that admission of evidence of prior bad acts which is relevant in the defendant's trial does not deny a fair trial. *Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974). According to the Michigan Court of Appeals, which applies a less stringent standard than a federal habeas court,

admission of this evidence did not affect petitioner's right to a fair trial. The evidence did not affect defendant's substantial rights because "the evidence of [petitioner's] alleged drug sales showed the events leading up to the investigating officer obtaining the search warrant in this case. Therefore, it falls under the *res gestae* exception to MRE 404(b)." *People v. Herrera,* 2005 WL 1750769, at *1.

Petitioner also argues that he was denied a fair trial because admission of the prior drug sales was irrelevant evidence that tipped the scales in favor of his conviction. However, the evidence of petitioner's prior drug sales was not dispositive in proving his guilt. The prosecution presented other evidence, such as the odor of the cocaine in the apartment, the close proximity of the cocaine in Martinez's bedroom to petitioner's space in the living room, petitioner's possession of a car and cash despite being unemployed, and the presence of various implements of the cocaine trade such as a scale and baggies. Furthermore, the evidence was admissible under Rule 404(b) tto show both petitioner's knowledge of the presence of cocaine and his intent to distribute. *See People v. McGhee*, 268 Mich. App. 600, 612-13, 709 N.W.2d 595, 606-07 (2005). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.  *Sufficiency of the Evidence Claim (Claim II)*

Petitioner next claims that the evidence was insufficient to prove beyond a reasonable doubt that he knowingly possessed the cocaine with intent to deliver. The Court should conclude that this claim is without merit.

1.  *Clearly Established Law*

The Constitution requires proof beyond a reasonable doubt of every element of an offense in order to convict a defendant. *In re Winship,* 397 U.S. 358, 364 (1970). The inquiry "does not

require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319. (1979) (quoting *Woodby v. Immigration & Naturalization Serv.,* 385 U.S. 276, 282 (1966)) (emphasis in original). However, a "mere modicum" of evidence–one that "has any tendency to make the existence of an element of a crime slightly more probably than it would be without the evidence," is insufficient to show guilt beyond a reasonable doubt. *Jackson,* 443 U.S. at 320. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *U.S. v. Orrico,* 599 F.2d 113, 117 (6th Cir. 1979). Reviewing courts must view the evidence, draw inferences, and resolve conflicting inferences from the record in favor of the prosecution. *Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). Finally, under the amended version of § 2254(d)(1), a federal habeas court must apply a more deferential standard of review of the state court decision. The question is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability

of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Petitioner was convicted of violating MICH. COMP. LAWS § 333.7401 (2)(a)(i), possession with intent to deliver 650 or more grams of cocaine. The elements of this offense are (1) that the recovered substance is cocaine; (2) that the cocaine is in a mixture weighing 650 grams or more; (3) that defendant was not authorized to possess the cocaine; and (4) that defendant knowingly possessed the cocaine with the intent to deliver. Petitioner alleges only that there was insufficient evidence to prove beyond a reasonable doubt the fourth element of the offense above–that he knowingly possessed the cocaine with the intent to deliver it. *See People v. Wolfe*, 440 Mich. 508, 516-17, 489 N.W.2d 748, 752 (1992). Under Michigan law, a person "need not have actual physical possession of a controlled substance to be guilty of possessing it." *Id*. at 519-20, 489 N.W.2d at 753. So long as the defendant has "dominion or control" over the controlled substance, he is in "possession" for purposes of the statute. *People v. Konrad,* 449 Mich. 263, 271, 536 N.W.2d 517, 536 (1995). In fact, one can "possess" a controlled substance jointly with others. *Wolfe,* 440 Mich. at 520, 489 N.W.2d at 753. Nonetheless, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id*. Constructive possession exists when the "totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id.* at 521, 489 N.W.2d at 753.

    2.    *Analysis*

Drawing all reasonable inferences in favor of the prosecution, there is sufficient evidence

to prove beyond a reasonable doubt that petitioner knowingly possessed the cocaine with the intent to deliver. The Michigan Court of Appeals reasonably concluded that the jury could find petitioner "had knowledge of [the cocaine's] presence and a right to exercise control over it." *People v. Herrera,* 2005 WL 1750769 at *2. Although the cocaine was found in a bedroom which petitioner did not use, other circumstances indicate that he had constructive possession of the cocaine. The officers testified about the odor in the apartment, petitioner possessed a car and cash yet was unemployed, there were implements throughout the apartment, such as heat-seal and packaging materials, and a digital scale. Finally, the evidence of petitioner's alleged drug sales five days prior to the raid also demonstrates his intent to distribute.

Petitioner also argues that there was insufficient evidence to support the prosecution's theory that he aided and abetted the cocaine distribution operation. Under Michigan law, one who counsels, aids or abets in the commission of a crime may be convicted and sentenced as if he had directly committed the crime. MICH. COMP. LAWS §767.39. Aiding and abetting under Michigan law requires proof of three elements: (1) commission of the underlying crime either by the defendant or some other person; (2) acts or encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent on the part of the defendant to commit the crime or knowledge by the defendant that the principle intended to commit the crime at the time aid or encouragement was given. *See People v. Acosta*, 153 Mich. App. 504, 511-12, 396 N.W.2d 463, 467 (1989) (per curiam); *see also*, *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (to establish aiding and abetting under Michigan law, " the prosecution must establish that the aider and abettor himself possessed the required intent or participated while knowing that the principal possessed the required intent."). Aiding and abetting describes "all forms of assistance rendered to the perpetrator

14

of a crime. This term comprehends all words or deeds which may support, encourage or incite the commission of a crime." *People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 397 (1974). The advice, aid, or encouragement may amount to very little and still qualify as aiding and abetting; it is not necessary that it be essential to the successful commission of the crime. *See id.*

The Michigan Court of Appeals correctly concluded that petitioner could be found guilty beyond a reasonable doubt under an aiding and abetting theory. He was closely associated with the other residents in the apartment and had lived in the apartment for over a year. *Herrera,* 2005 WL 1750769, at *3. Evidence of cocaine distribution, such as the packaging materials, scale, cutting agents, odor, and the cocaine itself permeated the apartment. As the Michigan Court of Appeals reasoned, "at a minimum, by allowing this drug enterprise to occur in his home, defendant gave aid and encouragement in committing the crime." *Id.*

Under either a principal theory or an aiding and abetting theory, the evidence is sufficient to prove all elements of the offense beyond a reasonable doubt. Accordingly, petitioner's claim should be denied.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the court of appeals's resolution of petitioner's evidentiary claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C.

§ 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE

Dated: 8/22/07

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 22, 2007.

s/Eddrey Butts<br>
Case Manager